In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 06-3476, 06-3987 & 06-3994

OMAR C. FERNANDEZ, FLORENCIO VICTOR
JIMENEZ-MATEO, and JULIO CALDERON,

*Petitioners*,

*v.*

MICHAEL B. MUKASEY, Attorney General
of the United States,

*Respondent.*

Petitions for Review from Decisions
of the Board of Immigration Appeals
Nos. A43-771-790, A14-833-354
and a Final Administrative Order of the
Office of Immigration and Customs Enforcement
No. A70-563-201

ARGUED OCTOBER 30, 2007—DECIDED SEPTEMBER 15, 2008

Before MANION, ROVNER, and SYKES, *Circuit Judges.*

MANION, *Circuit Judge.* Petitioners Florencio Victor
Jimenez-Mateo, Julio Calderon, and Omar Cendejas-
Fernandez (collectively "petitioners") were ordered
removed from this country. The orders of removal were

based on findings that petitioners' most recent state-court convictions for drug possession offenses constituted aggravated felonies under § 101(a)(43)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(43)(B), because each of the petitioners had previously been convicted of a controlled substance offense. The petitioners have filed timely petitions for review in this court. They assert that their first and second state-court convictions for simple drug possession cannot amount to an "aggravated felony" under § 101(a)(43)(B) of the INA. Because we have already found in *United States v. Pacheco-Diaz*, 506 F.3d 545 (7th Cir. 2007), that such convictions do constitute an "aggravated felony" under § 101(a)(43)(B) of the INA, we deny their petitions for review.

I.

We briefly summarize the facts and procedural history of each of the petitioners' cases below.

**A.  Julio Calderon**

Calderon is a citizen of Mexico who entered the United States illegally. He is also a documented member of the Latin Kings street gang, a national criminal organization based in Chicago. *See generally United States v. Olson*, 450 F.3d 655, 661-62 (7th Cir. 2006) (describing the organization of the Latin Kings). As one might expect of a member of the Latin Kings, Calderon has had several run-ins with the law. Most relevant to this opinion, however, are Calderon's convictions for marijuana possession: an

October 30, 2002 conviction for marijuana possession in violation of 720 ILCS 550/4(a), and an August 8, 2006 conviction for two counts of marijuana possession in violation of 720 ILCS 550/4(a) and (b).

In October 2006, the Department of Homeland Security ("DHS") initiated removal proceedings against Calderon. DHS charged that Calderon was subject to removal under § 237(a)(2)(A)(iii) of the INA, 8 U.S.C. § 1227(a)(2)(A)(iii), for having been convicted of an aggravated felony as defined in § 101(a)(43) of the INA, 8 U.S.C. § 1101(a)(43). DHS listed Calderon's three marijuana possession offenses as the basis for the aggravated felony charge. On November 8, 2006, DHS issued a final administrative removal order finding that Calderon was an aggravated felon and ordering him removed from the United States to Mexico. Calderon timely filed a petition for review of DHS's order in this court.

## B.  Omar Cendejas-Fernandez ("Fernandez")

Fernandez is a citizen of Mexico who was admitted to the United States as a lawful permanent resident in 1992. On September 28, 2001, Fernandez was convicted of two counts of cocaine possession in violation of 720 ILCS 570/402(c). On November 7, 2005, Fernandez again was convicted of cocaine possession in violation of 720 ILCS 570/402(c).

On March 29, 2006, DHS initiated removal proceedings against Fernandez. DHS charged that Fernandez was removable under § 237(a)(2)(A)(iii) of the INA, 8 U.S.C.

§ 1227(a)(2)(A)(iii), for having been convicted of an aggravated felony as defined in § 101(a)(43)(B) of the INA, 8 U.S.C. § 1101(a)(43)(B). Fernandez was ordered to appear before an Immigration Judge ("IJ"). After a hearing on May 22, 2006, the IJ issued an oral decision ordering that Fernandez be removed to Mexico. In reaching that decision, the IJ first cited this court's decision in *Ali v. Ashcroft*, 395 F.3d 722 (7th Cir. 2005), wherein we stated that any alien who has been convicted of a state controlled substance offense that is also a felony punishable under the Controlled Substances Act ("CSA") has, for immigration purposes, been convicted of an aggravated felony. The IJ then noted that Fernandez had been convicted of possessing a controlled substance in 2005 after a previous conviction for possessing a controlled substance in 2001. Because § 844(a) of the CSA, 21 U.S.C. § 844(a), makes drug possession punishable by more than one year of imprisonment—and hence a felony, *see* 18 U.S.C. § 3559(a)(5)—for those who have previously been convicted of a controlled substance offense, the IJ found by clear and convincing evidence that Fernandez had been convicted of an aggravated felony and was removable on that basis. In addition, the IJ found Fernandez statutorily ineligible for cancellation of removal. *See* 8 U.S.C. § 1229b(a)(3).

Fernandez appealed the IJ's decision to the Board of Immigration Appeals ("Board"). He argued that the IJ should not have found that his convictions qualified as an aggravated felony. The Board, however, agreed with the IJ that a state offense for possession of a controlled substance that occurred after a prior drug conviction

qualified as a "drug trafficking crime" under § 101(a)(43)(B) of the INA, 8 U.S.C. § 1101(a)(43)(B), because, under § 844(a) of the CSA, the most recent conviction would be defined as a felony. Consequently, the Board affirmed the IJ's decision. Fernandez filed a timely petition in this court for review of the Board's decision.

## C.  Florencio Victor Jimenez-Mateo ("Mateo")

Mateo is a citizen of the Dominican Republic who was admitted to the United States on an immigrant visa in October 1966. On December 23, 1989, Mateo was convicted of possessing a controlled substance in violation of New York Penal Law § 220.03. On April 26, 2002, Mateo was convicted of attempted possession of a controlled substance in violation of 720 ILCS 5/8-4. On April 12, 2006, Mateo received his third controlled-substance conviction, this time for possession of a controlled substance in violation of 720 ILCS 570/402(c).

After his conviction in April 2006, DHS filed a notice to appear charging that Mateo was removable under § 237(a)(2)(B)(I) of the INA, 8 U.S.C. § 1227(a)(2)(B)(I), because of his April 2006 conviction for possession of a controlled substance. At a hearing before an IJ, Mateo through counsel conceded that he was removable as charged, but sought cancellation of removal. In an oral decision, the IJ found that Mateo was removable from the United States as an alien convicted of a controlled substance violation. The IJ also found that Mateo was statutorily ineligible for cancellation of removal because he had been convicted of an aggravated felony. In particu-

lar, the IJ classified Mateo's 2006 drug possession offense as an aggravated felony, since that offense occurred after Mateo had been convicted previously of two controlled substance offenses. Mateo appealed the IJ's aggravated felony finding to the Board, but the Board affirmed the IJ's decision. Mateo then filed a timely petition for review of the Board's order affirming the IJ.

## II.

The sole issue on this appeal is whether the second (or, as is the case with Mateo, third) of each of the petitioners' multiple state-court convictions for drug possession was accurately characterized as an aggravated felony under § 101(a)(43)(B) of the INA. Section 101(a)(43) of the INA provides an extensive list of crimes that qualify as aggravated felonies. Specifically, subsection 101(a)(43)(B) adds "illicit trafficking in a controlled substance . . . including a drug trafficking crime (as defined in section 924(c) of Title 18) . . . whether in violation of Federal or State law" to that list. 8 U.S.C. § 1101(a)(43). Section 924(c), in turn, defines the term "drug trafficking crime" as, among other things, "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)." 18 U.S.C. § 924(c)(2). As the Supreme Court has stated, a state drug offense is considered "analogous" to a "felony punishable under the Controlled Substances Act," and, as a result, an aggravated felony for purposes of the INA, "only if it proscribes conduct punishable as a felony under that federal law." *Lopez v. Gonzales*, 127 S. Ct. 625, 632 n.8, 633 (2006).

In this case, the petitioners argue that their state con-victions were wrongly classified as aggravated felonies because the state statutes under which they were convicted only proscribe simple possession, which is not a felony under the CSA. In response, the government contends that the petitioners' most recent convictions for drug possession are analogous to what the courts refer to as "recidivist possession" under 21 U.S.C. § 844(a), which is a felony under the CSA, because those convictions were preceded by at least one prior drug possession convic-tion. The pertinent portion of § 844(a) states:

> It shall be unlawful for any person knowingly or intentionally to possess a controlled substance. . . . Any person who violates this subsection may be sentenced to a term of imprisonment of not more than 1 year, and shall be fined a minimum of $1,000, or both, except that if he commits such offense after a prior convic-tion under this subchapter or subchapter II of this chapter, or a prior conviction for any drug, narcotic, or chemical offense chargeable under the law of any State, has become final, he shall be sentenced to a term of imprisonment for not less than 15 days but not more than 2 years, and shall be fined a minimum of $2,500 . . . .

21 U.S.C. § 844(a). The second sentence in the portion of § 844(a) quoted above transforms what would ordinarily be a misdemeanor offense for simple possession into a felony where the current offense was preceded by a prior conviction for a controlled substance offense. However, for the government to obtain a felony conviction under

§ 844(a), it has to, pursuant to 21 U.S.C. § 851, file notice of the prior conviction and, if challenged, prove to the judge the existence of the prior conviction beyond a reasonable doubt. The petitioners therefore counter the government's argument by asserting that the Illinois statutes under which the petitioners were most recently convicted are not the state "counterparts" to a felony violation of § 844(a), since none of those statutes required the state of Illinois to give notice of the petitioners' prior convictions or prove the existence of those convictions, as § 851 would have required had petitioners been prosecuted in federal court. While Illinois law does provide for a sentencing enhancement for recidivist drug possession, 720 ILCS 570/408(a), none of the petitioners' sentences for their most recent possession offenses was enhanced under that provision.[1] Thus, the real question in this case is whether an alien's second (or subsequent) state conviction for simple drug possession amounts to an aggravated felony in terms of a "felony punishable under the Controlled Substances Act" when the state did not treat the alien as a recidivist.

In this circuit, that question has already been answered, albeit in a different context. Just before oral argument in this case, this court decided *United States v. Pacheco-Diaz* (*Pacheco I*), 506 F.3d 545 (7th Cir. 2007). In *Pacheco I*, this court addressed the question of whether an alien's

---

[1]  Illinois law requires that the defendant be given notice of the state's intention to seek such an enhancement in the charge. 725 ILCS 5/111-3(c).

second state conviction for simple possession of marijuana constituted an aggravated felony for purposes of determining a sentencing enhancement under § 2L1.2(b)(1)(C) of the United States Sentencing Guidelines.[2] Section 2L1.2(b)(1)(C) of the guidelines instructs a sentencing court to enhance a defendant's offense level eight levels if the defendant previously was deported after a conviction for an aggravated felony. The application notes to § 2L1.2 explain that, for purposes of subsection (b)(1)(C), the term "aggravated felony" has the same meaning as given in § 101(a)(43) of the INA. U.S.S.G. § 2L1.2 application note 3(A) (2007). The district court had found that the sentencing enhancement applied because, among other things, Pacheco-Diaz's January 2002 conviction for marijuana possession, following as it did an October 2000 conviction for marijuana possession, would be treated as a federal felony under the recidivist enhancement provision of 21 U.S.C. § 844(a). *Pacheco I*, 506 F.3d at 548.

This court in *Pacheco I* agreed with that reasoning. In our opinion, we first referenced footnote six of the Supreme Court's opinion in *Lopez v. Gonzales*, wherein the Supreme Court noted that Congress had indeed classified a § 844(a) felony offense as "illicit trafficking," thus bringing that offense within the definition of an aggravated felony under § 101(a)(43)(B) of the INA. *Pacheco I*, 506 F.3d at 548. We recognized that a circuit split existed in the

---

[2] Pacheco-Diaz had been convicted of reentering the United States after previously having been deported, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). *Pacheco I*, 506 F.3d at 547.

sentencing context regarding the treatment of § 844(a) with respect to the INA's aggravated felony definition. We sided with those circuits that analogized a second state conviction for drug possession to § 844(a) when determining whether that state conviction constituted an aggravated felony for purposes of the sentencing guidelines. *Id*. at 549 (citing *United States v. Palacios-Suarez*, 418 F.3d 692, 700 (6th Cir. 2005); *United States v. Sanchez-Villalobos*, 412 F.3d 572, 576-77 (5th Cir. 2005); *United States v. Simpson*, 319 F.3d 81, 85-86 (2d Cir. 2002)). "Had Pacheco been charged in federal court with his second drug possession charge," we stated, "he would have been eligible for a recidivist enhancement under section 844(a)." *Id*. at 550. The second state possession conviction was analogous to a felony under the CSA because § 844(a) would have exposed Pacheco to a possible sentence of imprisonment of two years had it been charged in federal court. That made the conviction analogous to a "drug trafficking crime" under § 924(c), and, as a consequence, an aggravated felony under § 101(a)(43)(B) of the INA. *Id*.

Pacheco later petitioned for rehearing. Citing the oral argument in this case, Pacheco argued that rehearing should be granted because he had raised the same argument that petitioners raise here, namely, that a second state drug-possession offense cannot be treated as a federal felony under § 844(a) when the alien was not charged in state court as a recidivist. The opinion in *Pacheco I*, Pacheco asserted, overlooked that argument. Pacheco also argued that this court in *Pacheco I* did not fully consider the application of the Supreme Court's decision in *Lopez v. Gonzales*, 127 S. Ct. 625 (2006), in rendering

its decision. Finally, Pacheco argued that rehearing should be granted because two other circuits had decided the issue differently after *Pacheco I* had been submitted.

We denied Pacheco's motion for rehearing. *United States v. Pacheco-Diaz* (*Pacheco II*), 513 F.3d 776 (7th Cir. 2008) (per curiam). This court was not swayed by the fact that Pacheco's Illinois convictions were not based on that state's recidivist statute. *Lopez*, we said, held that classification of an offense for the purpose of § 101(a)(43) depends on how the defendant's conduct would be treated under federal law:

> If the conduct of which the defendant has been convicted would be a felony under federal law, then it comes within [§ 101(a)(43) of the INA] if it meets that statute's requirements concerning the subject-matter of the crimes and the length of the sentence. . . . In a hypothetical-federal-felony approach, it does not matter whether the defendant was charged in state court as a recidivist; indeed, it does not matter whether the state has a recidivist statute in the first place. What provides the classification under [§ 101(a)(43)] is federal rather than state law.

*Id*. at 778-79. We concluded: "Looking at the conduct reflected in the state convictions, as opposed to the precise state crime charged, is the only way to implement the hypothetical-federal-felony view that *Lopez* adopted as its holding." *Id*. at 779.

Shortly after oral argument, we ordered supplemental briefing on the application of *Pacheco I* to this case. In

their supplemental brief, the petitioners make several arguments as to why *Pacheco I* does not apply to this case, all of which we reject. First, the petitioners argue that *Pacheco I* does not apply because it was a sentencing case, while this is an immigration case. In support of that argument, petitioners point out that this court in *Pacheco I* cited only sentencing cases from other circuits on the question of whether a second state possession conviction amounted to an aggravated felony; no reference was made to any of the immigration cases dealing with this issue. *Compare Pacheco I*, 506 F.3d at 549 (citing sentencing cases that have dealt with this issue)*, with In re Carachuri-Rosendo*, 24 I&N Dec. 382, 385 (BIA 2007) (en banc) (citing both immigration and sentencing cases). The lack of citations to immigration cases in *Pacheco I* is insignificant. We interpret the identical statutory provisions in this case as the court did in *Pacheco I*. Our interpretation of the same statutes should be consistent, regardless of the context. *See Clark v. Martinez*, 543 U.S. 371, 378 (2005) ("To give these same [statutory] words a different meaning for each category [of aliens] would be to invent a statute rather than interpret one."); *see also Leocal v. Ashcroft*, 543 U.S. 1, 12 n.8 (2004) (stating that statute must be interpreted consistently whether it is encountered in a criminal or an immigration context).

Relying on dicta in *Gonzales-Gomez v. Achim*, 441 F.3d 532, 535-36 (7th Cir. 2006), petitioners nevertheless insist that immigration cases call for a different interpretation of the aggravated felony definition than sentencing cases. The dicta in *Gonzales-Gomez* to which petitioners refer was made in the context of distin-

guishing sentencing decisions in other circuits from holdings in this court. Regardless of what was said in *Gonzales-Gomez*, any distinction between sentencing and immigration for purposes of interpreting identical provisions of the aggravated felony definition is foreclosed after the Supreme Court's decision in *Lopez v. Gonzales*, 127 S. Ct. 625 (2006). In *Lopez*, the Supreme Court drew no distinction between sentencing cases and immigration cases. Though *Lopez* itself was an immigration case, the Supreme Court cited—and its opinion abrogated—lower court sentencing cases. *See Lopez*, 127 S. Ct. at 629 n.3 (citing, among other sentencing cases, *United States v. Wilson*, 316 F.3d 506 (4th Cir. 2003), and *United States v. Simon*, 168 F.3d 1271 (11th Cir. 1999)). Thus, the Court clearly signaled that it meant any interpretation of § 101(a)(43) of the INA to apply uniformly, regardless of the context.

Second, petitioners cite the Board's decisions in *In re Carachuri-Rosendo*, 24 I&N Dec. 382 (BIA 2007), and *In re Thomas*, 24 I&N Dec. 416 (BIA 2007), as a reason to distinguish *Pacheco I*. Those cases were decided after the *Pacheco I* opinion was released. In them, a majority of the Board held that, absent controlling federal circuit precedent to the contrary, an alien's state conviction for simple possession of a controlled substance "will not be considered an aggravated felony conviction on the basis of recidivism unless the alien's status as a recidivist drug offender was either admitted by the alien or determined by a judge or jury in connection with a prosecution for that simple possession offense." *Carachuri*, 24 I&N Dec. at 394. Board Member Roger Pauley filed a concurring

opinion in *Carachuri*, joined by Acting Vice Chairman Gerald Hurwitz, taking the opposite view. *See id*. at 400.

We fail to see how the Board's decision to spurn *Pacheco I* affects the outcome in this case. This court in *Pacheco II* was unconcerned about the Board's about-face in *Carachuri*. We not only explicitly stated in *Pacheco II* that we agreed with the reasoning of Board Member Pauley's concurring opinion, but also that we disagreed with the majority of the Board's conclusion that a state possession offense could only be an aggravated felony if the alien was treated as a recidivist in state court.[3] *Pacheco II*, 513 F.3d at 778. We see no reason to deviate from that view.

Next, the petitioners argue that *Pacheco I* should not apply here because the court in *Pacheco I* was not presented with what, according to the petitioners, is the "key legal issue" raised in this case, namely, "whether an immigrant who was not charged and convicted as a recidivist in criminal court" can nevertheless be labeled an aggravated felon. Petitioners argue that *Lopez* mandates a "strict categorical approach" that allows courts to examine only what the state statutory offense under which the immigrant was charged proscribes when determining whether federal law defines the offense as a felony. *See Taylor v. United States*, 495 U.S. 575, 602 (1990). Because none of the petitioners was charged as a

---

[3] Judge Rovner dissented in *Pacheco II* and, citing the majority of the Board's decision in *Carachuri*, stated that she believed the approach this court took in *Pacheco I* may have been mistaken. *Pacheco II*, 513 F.3d at 781 (Rovner, J., dissenting).

recidivist in state court, petitioners argue that their state possession offenses cannot be treated as "analogous" to recidivist possession under § 844(a) for purposes of the aggravated felony definition.

There are two problems with that line of argument. First, arguably raised in both Pacheco's initial and reply briefs,[4] it *was* treated by the court in the passages of the *Pacheco II* opinion we have quoted above. Second, and more importantly, it does not survive scrutiny on the merits. Ordinarily, in order to determine whether a state offense is "analogous"[5] to a federal offense listed in the INA's definition of an aggravated felony, this court and others categorically compare the elements of the state offense with the elements of the federal offense. *See, e.g.*, *Gonzales v. Duenas-Alvarez*, 127 S. Ct. 815, 818-19 (2007); *see also Gattem v. Gonzales*, 412 F.3d 758, 765 (7th Cir. 2005). We explained the operation of the so-called "categorical" approach in *Gattem*: "one looks to the elements of the state offense in question and, where necessary, to the charging document pursuant to which the petitioner

---

[4] *See* Brief of Defendant-Appellant at 27-29, *United States v. Pacheco-Diaz*, No. 05-2264 (7th Cir. May 8, 2006); Reply Brief of Defendant-Appellant at 2-6, *United States v. Pacheco-Diaz*, No. 05-2264 (7th Cir. Sept. 22, 2006).

[5] "Analogous" is the term that was used by the Supreme Court for determining whether a state offense, when compared to a federal offense listed in § 101(a)(43) of the INA, qualifies as an aggravated felony. *Lopez*, 127 S. Ct. at 632 n.8 (citing *Matter of Barrett*, 20 I&N Dec. 171, 178 (BIA 1990)).

was convicted, to determine whether the offense corresponds to one of the crimes described as aggravated felonies in the INA." 412 F.3d at 765.

While that approach works for many cases, applying a strict categorical approach in this case does not resolve the issue of whether the petitioners' multiple drug offenses qualify as aggravated felonies. The elements of the Illinois possession offenses the petitioners committed and the elements of both a felony and a misdemeanor violation of § 844(a) are the same. *Compare United States v. Stone*, 139 F.3d 822, 834 (11th Cir. 1998) (describing elements of a § 844(a) possession offense), *with People v. Frieberg*, 589 N.E.2d 508, 524 (Ill. 1992) (describing elements of a violation of 720 ILCS 570/402), *People v. Davis*, 519 N.E.2d 103, 105 (Ill. App. Ct. 1988) (describing elements of Illinois offense of possession of a controlled substance), *and* 2 Illinois Pattern Jury Instruction-Criminal 17.02 (4th ed. 2000) (describing elements of possession of cannabis in violation of 720 ILCS 550/4). Recidivism is the key ingredient in differentiating between a felony and a misdemeanor offense for drug possession under federal law. However it is not an element of the offense of drug possession, but instead is simply a *penalty provision*. It enhances the maximum possible sentence for a drug possession offense from one to two years if the defendant commits the offense after a prior conviction for a controlled substance offense has become final. *See* 21 U.S.C. § 844(a); *see also Almendarez-Torres v. United States*, 523 U.S. 224, 244 (1998) ("Congress . . . has never, to our knowledge, made a defendant's recidivism an element of an offense where the conduct proscribed is otherwise unlawful.");

*Stone*, 139 F.3d at 834. Thus, the fact that the state offense of conviction did not contain a recidivist element is irrelevant. What makes a state offense for drug possession analogous to a federal felony (and thus an aggravated felony) as opposed to a federal misdemeanor is the heightened penalty for recidivism, which is not an element of the offense.

The dissent points out that Justice Thomas's concurrence in *Apprendi* signals that *Almendarez-Torres* may not be the law of the land much longer. *Infra* at 38 n.3. But until the Supreme Court explicitly overrules that case, we are bound by it. *See United States v. Hendrix*, 509 F.3d 362, 375 (7th Cir. 2007) ("[W]e have held that unless and until the Supreme Court chooses to overrule *Almendarez-Torre*s, we are bound by it." (citing cases)); *see also Calloway v. Montgomery*, 512 F.3d 940, 946 (7th Cir. 2008) ("*Almendarez-Torres* still lives."); *see generally Saban v. U.S. Dep't of Labor*, 509 F.3d 376, 378 (7th Cir. 2007) ("The Supreme Court has told the lower courts that they are not to anticipate the overruling of a Supreme Court decision, but are to consider themselves bound by it until and unless *the Court* overrules it, however out of step with current trends in the relevant case law the case may be."). *Almendarez-Torres*, along with the language and structure of § 844(a), makes clear that the heightened penalty for recidivism is not an element of a § 844(a) offense. Because recidivism is not an offense element, a categorical comparison of the elements of § 844(a) and the petitioners' most recent state possession offenses is inconclusive.

Although the categorical approach does not settle the matter, *Lopez* does. The Supreme Court in *Lopez* held that

a state drug felony was not an aggravated felony where the conduct proscribed by the state felony would have only been penalized as a misdemeanor under federal law. According to *Lopez*, what counts is the classification of the analogous federal offense as a felony. The state's decision to classify the offense as a felony or a misdemeanor is beside the point. *See Lopez*, 127 S. Ct. at 632-33 ("We cannot imagine that Congress took the trouble to incorporate its own statutory scheme of felonies and misdemeanors if it meant courts to ignore it whenever a State chose to punish a given act more heavily.").

In this case, the increased penalty that converts a simple misdemeanor offense for drug possession into a felony, like the lesser penalty for the offense that was the subject of *Lopez,* 127 S. Ct. at 628, is purely a matter of federal law. Again, *Lopez* tells us that, when it comes to determining the consequences of a state offense for purposes of federal immigration law, federal law, not state law, counts. While the state of Illinois conceivably could have enhanced the petitioners' state sentences under the Illinois provision similar to § 844(a),[6] that is beside the point. The question is whether the petitioners would have been subject to the increased penalty for having committed a prior drug offense had they been charged in *federal* court. As none of the petitioners disputes the existence of their prior convictions, the answer to that inquiry here must be "yes"; the petitioners' most recent state possession offenses are therefore properly classified as aggravated felonies.

---

[6]  *See* 720 ILCS 570/408(a).

What the petitioners really object to, of course, is this court looking at the petitioners' prior drug convictions in order to determine that their most recent convictions constitute aggravated felonies. They say that our going beyond the record of the most recent state offense is not allowed by *Lopez*, and that we are in effect "retrying" those offenses by doing so. But transcending the *state* offense in order to determine its analogous *federal* counterpart is exactly what the aggravated felony statute and *Lopez* require. Section 101(a)(43) of the INA states that the term aggravated felony "applies to an offense described in this paragraph whether in violation of Federal or State law." 8 U.S.C. § 1101(a)(43). In order to determine if a state offense is "described" by a federal offense incorporated into § 101(a)(43), we necessarily have to view the state offense through the lens of federal law, since "it is just not plausible that Congress meant to authorize a State to overrule its judgment about the consequences of federal offenses to which its immigration law expressly refers." *Lopez*, 127 S. Ct. at 633.

Moreover, going beyond the fact of the most recent possession conviction to make that determination is entirely consistent with *Taylor v. United States*, 495 U.S. 575 (1990). In *Taylor*, the Court adopted a "modified" categorical approach, under which, where a defendant was convicted of a state law burglary offense that was broader than the generic definition of burglary, a sentencing court could "go beyond the mere fact of conviction" to determine whether the "jury was actually required to find all the elements of generic burglary." *Taylor*, 495 U.S. at 602. Thus, where a state statute permitted a defendant to

be convicted of burglary for stealing from a place other than a building (such as an automobile), the government could still use that conviction for purposes of obtaining an enhancement under the Armed Career Criminal Act if it could show, from the charging document and the jury instructions, that the defendant was actually convicted of stealing from a building (and not an automobile). *Id.*[7]

This case is simply a corollary application of the approach explicitly recognized as permissible in *Taylor.* Here, because the definition of the Illinois possession offenses under which petitioners were convicted are overbroad—i.e., conduct punishable under those Illinois statutes could constitute either a federal misdemeanor or federal felony, depending on whether those offenses occurred after a previous drug conviction became final—we must look at the records of the petitioners' prior convictions to determine the federal consequences of the petitioners' offenses. Importantly, in so doing, we, consistent with *Taylor*, need not delve into the underlying facts of the petitioners' state convictions. *See Taylor*, 495 U.S. at 600 ("Congress intended the sentencing court to look only

---

[7] In *Shepard v. United States*, 544 U.S. 13 (2005), the Court extended that approach to the context of guilty pleas, holding that a sentencing court may consider "the terms of the charging document, the terms of a plea agreement or transcript of [a plea] colloquy between judge and defendant [or] some comparable judicial record" in determining whether the defendant actually pleaded guilty to, and was convicted of, generic burglary. *Id*. at 26.

to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions."); *Pacheco II*, 513 F.3d at 778-79.

The dissent is rightly concerned with the danger of "hypothetical 'what-ifing.'" *Infra* at 31-32. But that concern is not present in this case. In finding that the petitioners' state court offenses qualify as aggravated felonies, we are not looking at the real offense conduct underlying the petitioners' state offenses in order to conjure up a hypothetical state offense that is then analogous to a hypothetical federal offense. Rather, we are only looking *at the state offenses for which the petitioners were in fact convicted*: a state drug possession offense after a previous drug offense. (Notably, *none* of the petitioners contest the fact that they have such a record.)

We respectfully suggest that it is only the dissent that is dealing in hypotheticals. The offense that the dissent implies the petitioners ought to have been convicted of in state court to qualify as aggravated felons—i.e., a possession offense with a recidivist element—does not currently exist in Illinois. Illinois's sentencing enhancement for recidivist drug possession, like § 844(a), does not create a separate offense for "recidivist possession." *See* 720 ILCS 570/408(a); 725 ILCS 5/111-3(c) ("[T]he fact of such prior conviction and the State's intention to seek an enhanced sentence are not elements of the offense and may not be disclosed to the jury during trial . . . ."); *see also People v. Bradford*, 543 N.E.2d 918, 930 (Ill. App. Ct. 1989).

Petitioners bring to our attention two immigration cases from other circuits, not cited in either *Pacheco I* or *Pacheco II*, that have decided this issue differently. *See Berhe v. Gonzales*, 464 F.3d 74 (1st Cir. 2006); *Steele v. Blackman*, 236 F.3d 130 (3d Cir. 2001).[8] In those cases, the courts decided that subsequent state possession offenses were not aggravated felonies because the records of conviction for those state offenses did not reveal that the state courts followed procedures analogous to those outlined in 21 U.S.C. § 851. *Steele*, 236 F.3d at 137-38; *see also Berhe*, 464 F.3d at 85-86. (Recall that § 851 requires the government to file an information alleging the prior drug conviction and prove it, if contested, beyond a reasonable doubt to a judge.) The Third Circuit in *Steele* based its decision in large part on its concern about the fairness of transforming two state misdemeanors into an aggravated felony. According to the Third Circuit, defendants do not address misdemeanor charges with the same caution and care as a felony indictment. If states did not have procedures similar to § 851 in place, the Third Circuit reasoned, then defendants would not realize the grave immigration consequences that would attach to their misdemeanor plea.[9] *Steele*, 236 F.3d at 137.

---

[8] After this case was briefed and argued, the Sixth Circuit decided *Rashid v. Mukasey*, 531 F.3d 438 (6th Cir. 2008), wherein the Sixth Circuit reached the same conclusion as the First Circuit in *Behre* and the Third Circuit in *Steele*.

[9] The Third Circuit's concern also stemmed from a desire—echoed by the dissent, *see infra* at 34-35—to assure that

(continued...)

We "carefully consider the opinions of our sister circuits." *Klein v. DePuy, Inc.*, 506 F.3d 553, 558 (7th Cir. 2007). In this instance, we are unpersuaded by what, in our view, is a misdirected approach to the issue before us. The Third Circuit's fairness concern is inconsistent with *Lopez*; *Lopez* holds clearly that state felony-misdemeanor classifications are meaningless for purposes of determining whether a state offense is an aggravated felony under the immigration laws. Moreover, the First and Third Circuits, in requiring the record of an alien's most recent state-court possession conviction to demonstrate that some form of the procedures outlined in § 851 were followed in state court, essentially elevate those procedures to the level of an element of the offense. *See Steele*, 236 F.3d at 137 ("While the status of being 'a one time loser' is not technically an element of the offense proscribed by § 844, we agree with the District Court that it can be treated as such."); *see also Berhe*, 464 F.3d at 85-86; *Gerbier v. Holmes*, 280 F.3d 297, 317 (3d Cir. 2002). The

---

[9] (...continued)

defendants were not found to be aggravated felons on the basis of constitutionally invalid prior convictions. *See Steele*, 236 F.3d at 138 ("For all that the record before the immigration judge reveals, the initial conviction may have been constitutionally impaired."); *see also Rashid*, 531 F.3d at 447 (quoting *Steele*). Such a concern does not apply here, however, because ordinarily aliens in removal proceedings are not permitted to collaterally challenge their convictions. *See, e.g., Taylor v. United States*, 396 F.3d 1322, 1330 (11th Cir. 2005); *Trench v. INS*, 783 F.2d 181, 184 (10th Cir. 1986).

problem with that approach is that the § 851 procedures are clearly not an element of a § 844(a) offense.[10] We do not doubt, of course, that a federal defendant charged under § 844(a) could not receive a felony sentence unless the government complied with the procedures in § 851 for providing notice and proof of a prior drug conviction. *See United States v. LaBonte*, 520 U.S. 751, 754 n.1 (1997); *Harris v. United States*, 149 F.3d 1304, 1306 (11th Cir. 1998). But we do not see any reason to require that a state have followed the exclusively federal *procedures* set forth in § 851 in order for a state offense to qualify as an aggravated felony. Such a requirement, to us, would run contrary to the aggravated felony statute's clear language that an "offense described in" that statute qualifies as an aggravated felony "whether in violation of Federal or State law." 8 U.S.C. § 1101(a)(43). Thus, we respectfully disagree with those circuits that hold otherwise.

Petitioners make one other argument that merits attention. They argue that, if we follow the rule of *Pacheco I* here, then a second federal misdemeanor conviction for simple drug possession could be treated as if it were a federal felony, despite the fact that such a conviction is clearly not a felony under federal law. They argue that such a result "turn[s] the *Lopez* standard on its head." We

---

[10] Indeed, the statute explicitly states that the existence or validity of a prior conviction, if challenged, is to be determined by the *court*, not a jury. 21 U.S.C. § 851(c) ("The court shall hold a hearing to determine any issues raised . . . . The hearing shall be before the court without a jury . . . .").

are quite skeptical that such a result follows from reaffirming *Pacheco I*. The petitioners' argument presumes that one could analogize misdemeanor violations of a federal offense specifically incorporated into the aggravated felony definition to a felony violation of the same incorporated federal offense. Analogizing makes sense when determining whether a *state* conviction qualifies as an aggravated felony. The statute says that offenses described in the aggravated felony definition count "whether in violation of Federal or State law." *Id.* As most of the offenses listed in or incorporated into the aggravated felony definition (besides the generic offenses such as murder and rape) are strictly federal, some mode of comparing state crimes to those federal crimes is necessary. But analogizing makes little sense when dealing with a conviction for a *federal* offense, like § 844(a), that is specifically incorporated into the aggravated felony definition. Since those federal statutes are specifically referenced in the aggravated felony definition, there is no need to compare anything. A violation of one of those statutes either is, or is not, a felony, and thus is, or is not, an aggravated felony.

We need not pursue the matter any further. The hypothetical the petitioners pose implicates other concerns not present in a case, such as this one, where the main question revolves around analogizing a state offense to a federal offense specifically incorporated into the aggravated felony definition.

Finding none of the petitioners' arguments persuasive, we conclude that the rule of *Pacheco I* does apply, and

that the Board and DHS did not err in finding that the petitioners were statutorily ineligible for cancellation of removal on the basis of their having been convicted of an aggravated felony.

### III.

*Pacheco-Diaz*, 506 F.3d 545 (7th Cir. 2007), controls this case. Thus, each of the petitioners' most recent state court convictions for drug possession constituted an aggravated felony under the INA because each occurred after a previous drug conviction became final. We AFFIRM.

ROVNER, *Circuit Judge, dissenting.* The three petitioners in this case all have criminal records that include two or more misdemeanor convictions for simple possession of an illegal drug. None has a felony conviction. The distinction between felony convictions and misdemeanor convictions is critical to non-citizens who are subject to removal from this country. (It is also of great import to those being considered for certain sentencing enhancements under the Sentencing Guidelines, but this is a topic for another time.) Ordinarily persons subject to removal may petition the United States Attorney General and ask that he use his discretion to cancel a removal

order. 8 U.S.C. § 1229b(a). The Attorney General, however, has no discretion to cancel the removal of a person who has been convicted of an aggravated felony. 8 U.S.C. § 1229b(a)(3). The battle over what constitutes an aggravated felony, therefore, recurs with some frequency and fervor in immigration cases. The answer may mean the difference between the possibility of staying in this country or leaving behind family, children, and the homes the petitioners may have known their whole lives. Florencio Victor Manuel Jimenez-Mateo has lived in this country for approximately forty-two of his fifty-six years. He has been a lawful permanent resident since 1971. If deported, he will be leaving behind his job, his two United States citizen children and the country he has called home since his early teens. Julio Cesar Calderon has lived in this country for twenty of his twenty-eight years. He has two United States citizen children who reside here. Omar Cendejas-Fernandez is twenty-five years old and has lived in this country legally since 1992. They have each been convicted of two (and in one case three) misdemeanor crimes. Whether the law requires us to consider these men's multiple convictions for misdemeanor drug crimes as felonies for purposes of removal proceedings is critical to them, as it will be to many others.

The answer lies buried in a maze of cross-referenced immigration and criminal statutes. Because the majority has expertly set forth each of the statutes, I need only trace through them in a cursory fashion. The Immigration and Nationality Act (INA) defines "aggravated felony" with a list of crimes that includes drug trafficking. 8 U.S.C. § 1101(a)(43)(B). It also notes that "[t]he term

[aggravated felony] applies to an offense described in this paragraph whether in violation of state or federal law." *Id.* at § 1101(a)(43). The INA then points readers to the criminal code (specifically 18 U.S.C. § 924(c)) for a definition of a drug trafficking crime. That section of the criminal code, in turn, defines a drug trafficking crime as "any felony punishable under the Controlled Substances Act." 18 U.S.C. § 924(c)(2). And finally, the Controlled Substances Act (CSA) turns a second-time drug conviction into a felony if the government files the necessary information with the court and serves it upon the defendant. 21 U.S.C. § 844, § 851. If this convoluted path has made the weary reader's eyes glaze over, they must come into focus here, for the petitioners win or lose based on how the Supreme Court instructs the lower courts to decide whether a particular state crime falls within the rubric of the CSA. The Supreme Court, in *Lopez v. Gonzales*, 549 U.S. 47, 127 S. Ct. 625, 633 (2006), declared that a state drug offense is analogous to a felony punishable under the Controlled Substances Act "only if it proscribes conduct punishable as a felony under that federal law." *Id.*

Some courts, including our own, have described the Supreme Court's approach in *Lopez* as the "hypothetical federal felony approach." *See, e.g., Escobar Barraza v. Mukasey*, 519 F.3d 388, 390 (7th Cir. 2008); *U.S. v. Pacheco-Diaz*, 513 F.3d 776, 779 (7th Cir. 2008) ("*Pacheco-Diaz II*"); *see also Rashid v. Mukasey*, 531 F.3d 438, 443 (6th Cir. 2008); *In re Carchuri-Rosendo*, 24 I&N Dec. 382, 396 (BIA 2007) (Pauley, J., concurring). In following the hypothetical federal felony approach, we look to see whether

a defendant's conviction would have been a felony if the defendant had been prosecuted under federal law. *Lopez*, 127 S. Ct. at 632-33; *Gonzales-Gomez v. Achim*, 441 F.3d 532, 535 (7th Cir. 2006). Under this approach, the phrase " 'any felony punishable under the CSA' is read 'to mean any conviction punishable as a felony under the CSA.' " *Rashid*, 531 F.3d at 442-43. The *Lopez* Court did not describe its methodology as a "hypothetical federal felony approach," and, in fact, the term "hypothetical" does not appear anywhere in the majority opinion. That is not to say that the term "hypothetical federal felony" is inapt. It simply requires additional parameters lest it grasps within its reach more than Congress intended. It does not, for example, allow an immigration court to determine that conduct for which a defendant was never charged and never convicted would have been a felony if the government had, hypothetically, prosecuted the defendant under federal law. *See, e.g., Rashid*, 531 F.3d at 445 ("We conclude that inclusion of the word 'hypothetical' in the 'hypothetical federal felony' approach does not provide the government with free reign to make ex-post determinations of what federal crimes an individual could hypothetically have been charged with where, as here, a prior drug-possession conviction was not at issue in the prosecution of the subsequent drug-possession offense."); *In re Carachuri-Rosendo*, 24 I&N Dec. at 393 (noting that a pure "hypothetical approach would authorize Immigration Judges to collect a series of disjunctive facts about the respondent's criminal history, bundle them together for the first time in removal proceedings, and then declare the resulting package to be 'an offense' that could have been prosecuted as a Federal felony.")

The additional parameters needed to constrain the hypothetical federal felony come from the categorical approach which requires that, when determining which state crimes Congress intended to treat as aggravated felonies for the purposes of the INA, the court must look only to the elements of the state offense in question (and, when necessary to the charging document) to determine whether the offense corresponds to one of the crimes described as an aggravated felony under the INA. *Gattem v. Gonzales*, 412 F.3d 758, 765 (7th Cir. 2005); *see also Taylor v. United States*, 495 U.S. 575, 602 (1990) (the categorical approach "generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense."). The hypothetical federal felony and the categorical approach are not mutually exclusive. A court can, and indeed must use the categorical approach in applying the hypothetical federal felony. This is precisely the methodology the *Lopez* Court required when it announced that, "a state offense constitutes a felony punishable under the Controlled Substances Act only if it [that is, the state offense] proscribes conduct punishable as a felony under that federal law." *Lopez*, 127 S. Ct. at 633. In other words, one looks to the description of the state offense to see whether the elements enunciated in that offense correspond to a federal felony.

The majority states that a strict categorical approach does not settle the matter in this case, but application of *Lopez* does. Ante at 17. This implies, however, that *Lopez* does not require the use of the categorical approach. In fact, *Lopez* demands that the categorical approach and

the hypothetical federal felony be applied together. *Lopez* specifically instructs that, when deciding if a state offense constitutes a felony under the CSA, a tribunal must look at the conduct *proscribed by the state offense*. *Lopez*, 127 S. Ct. at 633 (emphasis added). Of course, the conduct proscribed by the state offense may not always be identical to the defendant's conduct. There is no doubt, as the majority points out (ante at 18) that the state's decision to classify the offense as a felony or a misdemeanor is irrelevant and the only definition that matters is the one the federal government uses to define the behavior. But this statement skirts the issue. We still need to identify **which** behavior we must plug into the federal classification system. *Lopez* tells us that it is the behavior described in the state offense.

This amalgam of the hypothetical federal felony and categorical approaches means that immigration courts may not independently assess a defendant's conduct to determine whether such conduct would warrant a federal felony conviction, if, for example, the government had sufficient evidence to charge the defendant, if the defendant had not pled to lesser charges, if the critical evidence had not been suppressed, if a jury had found sufficient evidence of guilt, if all appeals had been unsuccessful, or if the government had opted to charge the defendant as a recidivist. *Lopez* constrains our hypothetical "what-ifing" to consideration of the conduct proscribed in the offense of conviction, and does not allow us to consider whether the defendant engaged in some other conduct that would have been a federal felony if a long chain of possibilities (or even one) had

come to fruition. Due to prosecutorial decision making, limited resources, legal strategy, and other factors, state prosecutors often charge and convict defendants of offenses that significantly under-represent the actual conduct of the defendant. It is true that in this way, state prosecutorial decisions will affect the Department of Homeland Security's (DHS's) ability to remove an alien pursuant to federal immigration law. DHS, however, cannot skip the inconvenient and cumbersome hurdles imposed by criminal procedure and base decisions on convictions a state court hypothetically could have secured. When we begin to compare "an offense a defendant could have been charged with in state court with an offense the defendant could have been charged with in federal court," we have reached "one too many levels of hypothetical application." *Pacheco-Diaz II*, 513 F.3d at 781. As the Third Circuit concluded when considering the identical issue, "[o]ne cannot suffer the disabilities associated with having been convicted of an aggravated felony unless one has been *convicted* of a felony." *Steele v. Blackman*, 236 F.3d 130, 136 (3d Cir. 2001) (emphasis in original). Without the normal protections in place when criminal history is vetted before a court, we risk relying on constitutionally infirm convictions and elevating minor infractions into felonies in a manner unintended by Congress.

In fact, Congress recognized the inherent danger of relying on prior convictions to turn a simple misdemeanor drug offense into a recidivist felony when it drafted § 844 and § 851 of the criminal code. Under 21 U.S.C. § 851(a)(1), before the government may rely

upon a prior conviction for sentencing purposes, it must file with the court, and serve on defense counsel an information revealing the previous convictions upon which it will rely. *Id.* The court must then give the defendant an opportunity to challenge the prior conviction and, if the defendant denies the allegations or validity of the prior conviction, hold a hearing in which the government must prove the validity or existence of the prior conviction beyond a reasonable doubt. *Id.* at (c)(1).[1] The requirements of § 851(a) are not pro forma. If the government fails to file such notice, the court cannot use the prior conviction to enhance the penalty. *United States v. LaBonte*, 520 U.S. 751, 754 n.1 (1997); *United States v. Arreola-Castillo*, No. 06-4055, 2008 WL 3892142 at *3 (7th Cir. August 25, 2008). The majority has gone to great lengths to highlight that the only thing that counts under *Lopez* is the federal government's classification system (ante at 18), but it is the federal classification system that makes it clear that there can be no felony conviction under § 844(a) for a second or more drug offense unless the government gives the court and the defendant notice that it intends to use the prior convictions. 21 U.S.C. § 851.

---

[1] A person may not challenge the validity of a prior conviction that is more than five years old. 21 U.S.C. § 851(e). One of the three petitioners here, Jiminez-Mateo, would have been barred from challenging the validity of his first possession offense. Presumably, however, he was still permitted to deny an allegation of the information of a prior conviction as indicated in § 851 (c)(1). Furthermore, the notice requirements of 21 U.S.C. § 851(a) would still have applied.

Framed another way, the majority's certain conclusion that the petitioners would have been subject to an increased penalty had they been charged in federal court is incorrect. The majority states:

> While the state of Illinois conceivably could have enhanced the petitioners' state sentences under the Illinois provision similar to § 844(a), that is beside the point. The question is whether the petitioners would have been subject to the increased penalty for having committed a prior drug offense had they been charged in *federal* court. As none of the petitioners disputes the existence of their prior convictions, the answer to that inquiry here must be "yes"; the petitioners' most recent state possession offenses are therefore properly classified as aggravated felonies.

Ante at 18 (emphasis in original) (footnote omitted). The petitioners, however, would have been subject to the increased penalty **only if** they had been charged as **repeat** offenders under 21 U.S.C. § 851. And that is a big "if." After all, they were not charged as repeat offenders in state court. This is the "one too many levels of hypothetical" with which we were concerned in *Pacheco-Diaz*. *See Pacheco-Diaz II*, 513 F.3d at 781.

The requirements of § 851(a) are not without good reason. As the Sixth Circuit noted, "many misdemeanor or lesser convictions are processed under questionable circumstances and may be found invalid if challenged." *Rashid*, 531 F.3d at 447 (citing the brief amici curiae of the Criminal Defense Attorneys of Michigan and the New York State Defenders Association). The Third Circuit too commented on the danger of relying on a previous

misdemeanor where its existence and constitutional integrity was never litigated as part of any criminal proceeding. *Steele*, 236 F.3d at 137-38. The Board of Immigration Appeals, after weighing these concerns, concluded that unless constrained by circuit law otherwise, "an alien's State conviction for simple possession will not be considered an aggravated felony conviction on the basis of recidivism unless the alien's status as a recidivist drug offender was either admitted by the alien or determined by a judge or jury in connection with a prosecution for that simple possession offense." *In re Carachuri-Rosendo*, 24 I&N Dec. at 394. In so concluding, the Board noted that its approach differed from this Circuit's approach in *Pacheco-Diaz*. Although constrained by the binding precedent of *Pacheco-Diaz* in this Circuit, the Board has stated that it will decline to follow the *Pacheco-Diaz* approach elsewhere. It is now my position that the Board and our sister courts in the First, Third, and Sixth Circuits have the better view. *See, e.g., Rashid v. Mukasey*, 531 F.3d 438 (6th Cir. 2008); *Berhe v. Gonzlaez*, 464 F.3d 74 (1st Cir. 2006); *Steele v. Blackman*, 236 F.3d 130 (3d Cir. 2001). In short, a conviction for simple misdemeanor possession in which a court has never adjudicated or considered the fact or validity of a prior conviction should not be equated with a recidivist possession conviction under 21 U.S.C. § 844(a).

One more scenario adds weight to this conclusion. If the majority's contrary theory is correct, then a federal defendant who has been convicted of two separate federal misdemeanor possession crimes could be deemed an aggravated felon despite the government's failure to comply with the absolute requirements of 21 U.S.C. § 851.

But we know in no uncertain terms that the government may not engage the recidivist portion of § 851 without meeting all of the requirements of that section. *LaBonte*, 520 U.S. at 754 n.1. The majority dismisses this paradox by stating that is skeptical that such a result would follow. State violations, it argues, must be compared with and then molded into the analogous federal offense of 21 U.S.C. § 844(a). Federal violations under § 844(a), the majority argues on the other hand, need not be compared to anything, and so they become recidivist crimes only if the government follows the dictates of § 851. This rationale is confusing. If the federal government deems it necessary to give a federal defendant the protections of § 851 (notice, opportunity to respond etc.) before subjecting that defendant to felony charges as a repeat offender under § 844(a), why would state recidivists—whose crimes are being analogized into the rubric of § 844(a)—not require the same protections? Surely Congress does not have more confidence in the validity of convictions from the thousands of (ofttimes minuscule, isolated, and under-resourced) state courts around the country than it has in its own federal courts. In any event, it seems clear that Congress intended for recidivists to be charged as recidivists before a court may pile on to the punishment.

This is not to say that a state recidivist law must mirror 21 U.S.C. § 851 precisely before a state recidivist can be labeled a felon pursuant to 21 U.S.C. § 844(a). One might imagine that as long as a defendant has some form of notice of and opportunity to challenge the prior conviction, then the state offense would qualify as a conviction

punishable under the CSA and thus meet the standard declared in *Lopez*.[2] The Sixth Circuit, in considering this question, concluded that "[p]rovided that an individual has been *convicted* under a state's recidivism statute and that the elements of that offense include a prior drug-possession conviction that has become final at the time of the commission of the second offense, then that individual, under the categorical approach, has committed an aggravated felony under § 844(a)." *Rashid*, 531 F.3d at 448 (emphasis in original); *accord In re Carachuri Rosendo*, 24 I&N Dec. at 391 ("State recidivism prosecutions must correspond to the CSA's treatment of recidivism by providing the defendant with notice and an opportunity to be heard on whether recidivist punishment is proper."). At this juncture we need not determine how closely the state notice and opportunities to challenge must resemble those in the federal rule. In each of the cases presented here, the petitioners were convicted of simple misdemeanors with no mention of any prior conviction. The conduct prohibited by the offenses for which they were convicted was simple possession—a crime not punishable as a felony under the CSA.

The majority hangs its hat on our recent decision in *United States v. Pacheco-Diaz*, 506 F.3d 545 (7th Cir. 2007) (*Pacheco-Diaz I*), a sentencing enhancement case, wherein we concluded that the defendant's second misdemeanor

---

[2] Illinois does have a law that provides for a sentencing enhancement for recidivist possession (720 ILCS 570/408(a)) and requires that the state give the defendant notice of the state's intention to seek the enhancement. 725 ILCS 5/111-3(c).

conviction for possession of marijuana would be treated as a federal felony under the recidivist provision of 21 U.S.C. § 844(a). *Id.* at 550. We issued the decision in *Pacheco-Diaz* after considering the Supreme Court's decision in *Lopez*, but without the benefit of briefing on the impact of that recently released opinion, and before the Board issued its decision in *Carachuri-Rosendo*. Although I authored the panel decision in *Pacheco-Diaz*, as I noted in my dissent to the denial of rehearing, and above, I now believe that case was incorrectly decided. *See Pacheco-Diaz II*, 513 F.3d at 779. Our opinion in *Pacheco-Diaz I* looked at Pacheco-Diaz's conduct rather than, as *Lopez* instructs, the conduct proscribed by the offense for which Mr. Pacheco-Diaz was convicted, and in that way did not give the categorical approach and the protective mechanisms of 21 U.S.C. § 851 their due. *See Pacheco-Diaz II*, 513 F.3d at 779-781 (7th Cir. 2008).[3]

---

[3] The majority also makes much of the fact that recidivism is a penalty provision and not an element of the offense of conviction. Ante at 17 (citing *Almendarez-Torres*, 523 U.S. 224, 244 (1998)). Although still reigning law, the viability of this notion is much in doubt. In *U.S. v. Apprendi*, 530 U.S. 466, 520, Justice Thomas, in concurrence, admitted siding with the erring position in *Almendarez-Torres* and concluded that the fact of a prior conviction is indeed an element of a recidivism statute—a position which allies him with the four dissenters in *Almendarez-Torres*. *Id.* at 520-21 (Thomas, J., concurring). Thomas' change of mind now means that at least five current members of the Supreme Court support the position that the fact of a prior conviction is indeed an element of a recidivism crime. In any

(continued...)

Requiring immigration courts to look at the conduct proscribed by the offense of conviction does not mean that those courts and the reviewing federal courts are beholden to the manner in which a state court has labeled a crime. Federal law must and does provide the classification for federal felonies. The only question is: "what is the federal law classifying?" Under a pure hypothetical federal felony approach, federal law looks at the defendant's conduct and classifies that conduct under the federal construct regardless of the actual offense of conviction. Under the hypothetical federal felony approach modified by the categorical approach, federal law classifies the conduct for which the defendant was convicted, or, as *Lopez* says, the conduct proscribed by the state statute. *Lopez*, 127 S. Ct. at 633.

In sum, by the command of *Lopez* and the categorical approach to federal/state offense comparison, we are obligated to look only at the offense of conviction and the conduct described therein. True, as the majority points out, there are limited situations in which we may peek behind the face of the conviction, to the charging documents, *Gattem*, 412 F.3d 758, 765 (2005), but the charging documents in these cases would have been no help. In each case in this appeal the state convicted the defendant

---

[3] (...continued)

event, this distinction does not get us around the Supreme Court's command in *Lopez* that we look to the conduct proscribed in the state offense of conviction. In this case that statute described conduct—simple possession—that would not have qualified as an aggravated felony under federal law.

of a simple misdemeanor without mention of any previous misdemeanor convictions. The state prosecutors opted not to charge these defendants as recidivist drug crime offenders and we cannot re-write history to make it so. The offenses for which each of these petitioners were convicted do not proscribe conduct that would be a felony under the CSA. Consequently, I would hold that none of their convictions constitutes an aggravated felony under § 1101(a)(43)(B) of the INA. I respectfully dissent.