NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 14, 2009
Decided November 4, 2009

**Before**

JOHN L. COFFEY, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 08-4188

| | |
|---|---|
| KURT GARBUTT, | Petition for Review of an Order |
| *Petitioner*, | of the Board of Immigration Appeals. |
| | |
| *v.* | No. A036 991 429 |
| | |
| ERIC H. HOLDER, JR., | |
| Attorney General of the United States, | |
| *Respondent*. | |

**O R D E R**

Kurt Garbutt, a citizen of Belize, was found to be removable after an immigration judge determined, applying this court's precedent in *Fernandez v. Mukasey*, 544 F.3d 862 (7th Cir. 2008), that his second state conviction for cocaine possession constituted an aggravated felony. The IJ further found that the aggravated-felony conviction rendered Garbutt ineligible to apply for cancellation of removal. Garbutt petitions for review and makes two primary arguments: (1) that *Fernandez* incorrectly fails to grant *Chevron* deference to the

BIA's position that a second or subsequent conviction for possession of a controlled substance is not an aggravated felony and (2) that, even if deference is not appropriate, we should overrule *Fernandez*.

The INA does not permit aliens to apply for cancellation of removal when they are found to have been "convicted of any aggravated felony." 8 U.S.C. § 1229b(a)(3). 8 U.S.C. § 1101(a)(43)(B) defines "aggravated felony," in part, as "illicit trafficking in a controlled substance, . . . including a drug trafficking crime (as defined in section 924(c) of Title 18)." Section 924(c), in turn, defines a "drug trafficking crime" as "any felony punishable under the Controlled Substances Act (CSA) (21 U.S.C. 801 et. seq.)." 18 U.S.C. § 924(c). Courts have interpreted the penultimate sentence of § 1101(a)(43), which provides that "[t]he term [aggravated felony] applies to an offense described in this paragraph whether in violation of state or federal law," in part to mean that state offenses which correspond to CSA felonies are aggravated felonies for immigration purposes. *Lopez v. Gonzales*, 549 U.S. 47, 60 (2006).

While the CSA treats simple possession of cocaine as a misdemeanor, *see* 21 U.S.C. § 844(a) (setting a maximum term of imprisonment at "not more than 1 year"), the CSA treats recidivist possession—a conviction for a possession offense after a prior possession conviction has become final—as a felony, *see id.* (setting a maximum penalty for recidivist possession at "not more than 2 years").

We have held that a second state conviction for simple possession is an aggravated felony under § 1101(a)(43)(B) because it corresponds to felony possession under the CSA, *see Fernandez*, 544 F.3d at 874; *United States v. Pacheco-Diaz*, 506 F.3d 545, 550 (7th Cir. 2007), *reh'g denied*, 513 F.3d 776, 779 (7th Cir. 2008). However, though the BIA has stated that it will apply circuit precedent on the matter, it has also determined that, in the absence of a controlling circuit precedent, IJs should not treat an alien's second state simple-possession conviction as an aggravated felony unless the conviction contains a finding of recidivism. *See Matter of Carachuri-Rosendo*, 24 I. & N. Dec. 382 (BIA 2007) (en banc) ("*Carachuri-Rosendo I*").

Garbutt first argues that we should defer to the BIA's default position—that a second state simple-possession offense is not an aggravated felony unless the conviction contains a specific finding of recidivism. Garbutt concedes that we owe no deference to the BIA's interpretation of § 924(c) because it is a federal criminal statute. He argues, however, that it is not § 924(c), but the penultimate sentence of § 1101(a)(43) that acts as the "textual linchpin" between the definition of aggravated felony and an alien's state-possession

conviction. It is this sentence, Garbutt contends, that codifies Congress' intent that only state criminal convictions analogous to drug trafficking crimes are aggravated felonies.

Though the penultimate sentence of § 1101(a)(43) makes clear that state crimes can be aggravated felonies, Garbutt argues that it is nonetheless ambiguous because it doesn't make clear what it means for a state criminal provision to be "described in" the provision. Because the interpretation of the INA is entrusted to the BIA, Garbutt contends, courts should defer to the BIA's reasonable interpretations of the "fit" or mode of comparison that IJs should apply to determine whether an alien's second state-possession conviction corresponds to the CSA felony-possession provision. Though we have held three times that a second state-possession conviction is a felony under § 1101(a)(43)(B)--twice in *Pacheco-Diaz* and once in *Fernandez*--Garbutt nonetheless argues that we should defer to the BIA's position, *see Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005) (stating that stare decisis cannot privilege circuit precedent over an agency interpretation unless the statutory language unambiguously forecloses that interpretation).

Garbutt's argument, although not without appeal, is not persuasive. Courts interpreting § 1101(a)(43)(B), including the Supreme Court, have reasoned, implicitly or explicitly, that the interpretation of the fit between state criminal statutes and the CSA is entrusted to the courts, not the BIA. *See, e.g., Alsol*, 548 F.3d at 210 ("when the BIA interprets state or federal laws . . . we review its interpretation *de novo*"). Though the hypothetical federal felony approach—where a court determines whether a state-possession conviction would be a felony under federal law—appears to have originated with the BIA, *see Matter of Barrett*, 20 I. & N. Dec. 171 (BIA 1990), only the Second Circuit has suggested that the BIA's interpretation of the approach may be due deference, *see Aguirre v. INS*, 79 F.3d 315, 317 (2d Cir. 1996), and that suggestion may be questionable today, *see Alsol v. Mukasey*, 548 F.3d 207, 210 (2d Cir. 2008) ("when the BIA interprets state or federal laws . . . we review its interpretation *de novo*").

This court's *Fernandez* majority opinion and the Supreme Court's opinion in *Lopez* both implicitly hold, however, that the BIA's position regarding the mode of comparison between state criminal convictions and the CSA is owed no deference. The majority in *Fernandez* considered and rejected the interpretation offered by the BIA's en banc majority in *Carachuri-Rosendo I*—that a second simple state-possession offense was not an aggravated felony. *Fernandez*, 544 F.3d at 868 ("[w]e fail to see how the Board's decision . . . affects the outcome of this case"). Necessary to the majority's argument in *Fernandez* is the understanding that the BIA's position regarding mode of comparison is due no deference.

In any event, the Supreme Court's *Lopez* opinion forecloses Garbutt's argument.  In *Lopez*, the Supreme Court construed § 1101(a)(43)(B) and § 924(c) to determine a slightly different issue—whether a state felony conviction that corresponded to a misdemeanor under the CSA was an aggravated felony for the purposes of § 1101(a)(43)(B).  *Lopez*, 549 U.S. at 50.  In reaching its decision, the Court considered the meaning of the penultimate sentence of § 1101(a)(43), which Garbutt claims is ambiguous.  The Court, however, did not see any ambiguity in the provision.  Rather, it understood the provision to serve two "perfectly straightforward" purposes: (1) demonstrating that generic crime descriptions within § 1101(a)(43) were covered by the provision regardless of whether they were state or federal crimes, and (2) confirming that a state offense whose elements include the elements of a felony punishable under the CSA is an aggravated felony.  *Id.* at 57.

*Lopez* also specifically abrogated the BIA's interpretive position.  *Id.* at 51-52.  The BIA had adopted the position of the majority of circuits—that a state felony which was a misdemeanor under the CSA was an aggravated felony under § 1101(a)(43)(B).  *Id.*  The Court, however, held the opposite, overruling the BIA and all circuits adopting the same position.  *Id.* at 52.  Implicit in this holding is the fundamental understanding that courts owe no deference to the BIA's interpretation of the mode of comparison between state criminal convictions and the CSA in determining whether a state conviction is an aggravated felony under § 1101(a)(43)(B).  Thus, Garbutt is only partially correct when he contends that *Lopez* did not "hold that this is not a *Chevron* situation."  While *Lopez* did not explicitly speak to deference, its approach unambiguously forecloses Garbutt's deference argument.  The Court also implicitly confirmed the BIA's own position that the fit between state crimes and federal crimes under § 1101(a)(43)(B) is a complicated question that involves the interplay of federal and state criminal statutes that is entrusted to the courts.  *See Lopez*, 549 U.S. at 52 (citing *Matter of Yanez-Garcia*, 23 I. & N. Dec. 390, 396-97 (2002) for the proposition that "BIA decisions would conform to applicable Circuit law").

Garbutt also points to *Negrete-Rodriguez v. Mukasey*, 518 F.3d 497 (7th Cir. 2008), a case in which we deferred to a BIA interpretation in what he calls "a nearly identical situation."  In *Negrete-Rodriguez*, we considered whether to defer to the BIA's interpretation of 8 U.S.C § 1101(a)(43)(E)(ii), which treats firearm offenses "described in" 18 U.S.C. § 922(g)(1) as aggravated felonies for the purposes of the INA.  *Negrete-Rodriguez*, 518 F.3d at 500.  Section 922(g)(1) contains an interstate nexus element, which requires that a firearm be possessed in or affect interstate commerce, to establish federal jurisdiction over the firearm offense.  § 922(g)(1).  The alien in *Negrete-Rodriguez* had been convicted under a state statute that did not contain an interstate nexus element.  The court found rational and

reasonable the BIA's determination that the interstate nexus element was not required for the state conviction to count as an aggravated felony. *Id.* at 503. Garbutt argues that this case calls for similar deference to the BIA's determination of the proper "fit" between the state statute of conviction and the federal offense under § 924(c).

While *Negrete-Rodriguez* does use the language of deference, the case upon which it most heavily relies, *United States v. Castillo-Rivera*, 244 F.3d 1020 (9th Cir. 2001), does not. In *Castillo-Rivera* the Ninth Circuit held that interpretation to the contrary—requiring a state offense of conviction to include a finding of an interstate nexus—would thwart Congressional intent. *Castillo-Rivera*, 244 F.3d at 1023-24. No deference argument was made or entertained. The *Negrete-Rodriguez* court considered the Ninth Circuit's reasoning "persuasive," *Negrete-Rodriguez*, 518 F.3d at 502, and appears to have used the language of deference only because that was how the litigants framed the issue.

Furthermore, Garbutt may not rely on *Negrete-Rodriguez* to urge us to defer to the BIA's interpretation. That case specifically distinguished a case interpreting § 1101(a)(43)(B), *Gonzales-Gomez v. Achim*, 441 F.3d 532 (7th Cir. 2006), as involving only "federal criminal law"—a matter entrusted to the courts rather than the BIA. *Negrete-Rodriguez*, 518 F.3d at 501. *Gonzales-Gomez*, like *Lopez*, interpreted § 1101(a)(43)(B) to determine whether a state felony corresponding to a federal misdemeanor was an aggravated felony. *Gonzales-Gomez*, 441 F.3d at 533-34. And, like *Lopez*, *Gonzales-Gomez* stands for the proposition that the interpretation of this fit is entrusted to the court—that no deference should be afforded the BIA's interpretation. *Id.*

Garbutt acknowledges that overruling our precedent requires en banc review or circulation to the entire court under CIR. R. 40(e), but in the alternative, we should simply reconsider *Fernandez*. In support Garbutt offers three arguments: that *Fernandez* misreads *Lopez* and *Taylor* to permit the IJ to consider two records of conviction together, that permitting the IJ to make recidivism determinations raises fairness concerns, and that the *Fernandez* approach will lead to state convictions being analyzed differently from federal ones.

These arguments are not novel; all were addressed and ultimately rejected by the majority in *Fernandez*. 544 F.3d at 870-72, 872-73, 873-74. Generally, principles of stare decisis require that "considerable weight [be given] to prior decisions of this court unless and until they have been overruled or undermined by the decisions of a higher court, or other supervening developments." *Santos v. United States*, 461 F.3d 886, 891 (7th Cir. 2006)

(citations omitted). Unless Garbutt can offer a compelling reason to overturn circuit precedent, he cannot prevail; he has provided no such reason.

Little has transpired since our *Fernandez* opinion. While the Second Circuit has joined the opposite side of the circuit split, *see Alsol*, 548 F.3d at 217, the Fifth Circuit recently reaffirmed its supporting position en banc, *see Carachuri-Rosendo v. Holder*, 570 F.3d 263, 264 (5th Cir. 2009) (en banc) ("*Carachuri-Rosendo II*"). Furthermore, we unanimously denied rehearing en banc in *Fernandez* just last April.

We have considered this issue three times—twice in *Pacheco-Diaz* and again in *Fernandez*—and have found that a second state-possession offense is an aggravated felony. Since Garbutt's deference argument is foreclosed and his alternative arguments have already been rejected, his petition for review is **DENIED**.